**Aaron Garfinkel, Administrator, Defendant in Error, v. Alliance Life Insurance Company of Illinois, Plaintiff in Error.**

## Gen. No. 13,787.

1. INSURANCE—*when forfeiture will not be enforced.* An insurer cannot defend against a policy by setting up that the same is void for misstatements in the application where at the time of the application it had knowledge of the facts with respect to which the claim of misstatement is made.

2. INSURANCE—*to whom life policy may be made payable.* A life insurance company organized under the laws of this state may lawfully issue a policy payable to the estate of the insured.

Assumpsit.  Error to the Municipal Court of Chicago; the Hon.
JOHN H. HUME, Judge, presiding.  Heard in the Branch Appellate
Court at the October term, 1907.  Affirmed.  Opinion filed April 3,
1908.

J. HENRY KRAFT, for plaintiff in error.

SIMON LAGROU, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the
court.

Defendant in error—hereinafter called plaintiff—
recovered a judgment against plaintiff in error—here-
inafter called defendant—upon a policy of life insur-
ance issued by said defendant to Marcus Garfinkel, de-
ceased.  From that judgment this writ of error is
prosecuted.

It is urged in behalf of the defendant, first, that "no
insurance was ever effected"; second, that no premium
was paid and therefore no contract exists; third, that
the applicant, Marcus Garfinkel, falsely stated his age
in the application upon which the policy issued;
fourth, that upon the application purporting to be
signed by the applicant there is a change in the desig-
nation of beneficiaries; and fifth, that the defendant
could not lawfully issue a policy payable to the estate
of the insured.

As to the first and second of the foregoing conten-
tions it appears that the policy was delivered to the in-
sured by one Louis Rosenberg, who is described in the
application attached to and made a part of the policy
as "agent."  The latter testifies that he received the
policy from and paid the premium to the company, but
that the insured never paid the premium to him.  His
statement is that after he delivered the policy to the in-
sured he asked the latter "for the money" and that the
insured "told me he still did not have the money and
I loaned him some of my own."  It appears therefore
from the testimony of this witness in behalf of the de-
fendant that the premium had been paid to the com-

pany at or before the time the policy was delivered to Rosenberg, the defendant's agent or solicitor, for delivery to the insured. Notwithstanding the alleged non-payment of the money to him, Rosenberg delivered the policy to the insured and, according to his own statement, trusted the insured for payment and loaned him some of his own money. If the insured owed the amount of the premium it was evidently not the company but Rosenberg who became his creditor. The defendant cannot be heard to say that the premium on the policy was not paid to it merely because it chose to refund—if it did so refund—to Rosenberg after the death of the insured the amount of the premium so paid. It was under no obligation to refund to Rosenberg and cannot so relieve itself from its obligations under its contract of insurance.

Defendant's third contention that the statements made by the insured in the application for the policy as to his age were false, was held by the court below to be without foundation. The contention is apparently based on an alleged application to defendant for insurance said to have been made the day before the date of the application upon which the policy in controversy was issued. This application purports to be "witnessed by Louis Rosenberg, agent." It contains the statement that the applicant was born on the fourteenth day of February 1850, and gives his age at nearest birthday as "forty-seven years." It is in the handwriting of Rosenberg and bears the signature "Mar-
his
cus X Tailor." This alleged application was never
mark
even turned over to the home office. Rosenberg testifies that he talked with the insured in "German and English mixed." The insured could neither read nor write English. He depended entirely on such translation of the alleged application as Rosenberg gave him, and it is impossible to regard seriously an alleged application filled out by an agent who does not even as-

certain the correct name of the applicant which he signs to it and who in 1907 describes the age of the alleged applicant at "forty-seven years," while stating that such applicant was born in 1850. The court below was justified in its conclusion that the evidence fails to support the defendant's contention that the insured did not state his age correctly when the application upon which the policy issued was written. The agent Rosenberg testifies that the last application, filled out by him, a copy of which is attached to and made a part of the policy, was not read over to the insured. Whatever criticisms this application may be open to, the defendant "cannot insist upon a forfeiture of a policy for a cause which was within the knowledge of its agent at the time the policy was issued." Security Trust Company v. Tarpey, 182 Ill. 52-59. To the same effect are Royal Neighbors v. Boman, 177 Ill. 27-32; Metropolitan Accident Ass'n v. Clifton, 63 Ill. App. 197-199; Metropolitan Life Ins. Co. v. Larson, 85 Ill. App. 143-152. It has been held that issuing a policy on an application in which some of the questions are imperfectly or unsatisfactorily answered is a waiver of objection on that ground. Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183-190.

It is urged that the defendant company could not lawfully issue a policy payable to the estate of the deceased. The defendant having been, it is said, organized under chapter 73 R. S., section 230 *et seq.*, the contention is that the defendant was prohibited from issuing the policy in question by section 238, wherein it is provided that a corporation doing business under that act shall not issue a policy "upon a life in which the beneficiary named has no insurable interest. Any assignment of the policy or certificate to a person having no insurable interest in the insured life shall render such a policy or certificate void." The copy of the application attached to and made a part of the policy in controversy states the beneficiary to be "my estate." What is said to be the original of that application

contains the same designation "to my estate," but a line is drawn through these words and after them the names of the wife and two daughters of the insured are written in. The change does not purport to have been made by the insured, but was inserted by the agent Rosenberg, according to his statement, under the direction of the insured when told that the company would not issue a policy payable to his estate. It is singular if the change was made before the policy was issued that it does not appear in the policy itself nor in the copy of the application attached to the policy. However this may be, we are of opinion that the statute in question does not prohibit an issue of a policy payable as is the one in controversy. In Warnock v. Davis, 104 U. S. 799, an insurable interest is "stated generally * * * to be such an interest arising from the relations of the party obtaining the insurance either as creditor of or surety for the assured or from the ties of blood or marriage as will justify a reasonable expectation of advantage or benefit from the continuance of his life." The policy in the case at bar is by its terms made payable "to my estate (or to such beneficiary as may hereafter be duly designated) if living, otherwise to the executors, administrators or assigns of the insured." If the objection here made was well founded, and we do not so regard it, we are of opinion nevertheless that the contract being executed, the defendant when "called upon to perform its part of the contract cannot refuse and defeat a recovery by claiming that the contract is *ultra vires.*" Benefit Ass'n. v. Blue, 120 Ill. 121-128. If the designation "to my estate" were to be deemed invalid, recovery could still be had under the terms of the policy by the plaintiff as administrator. Shea v. Mass. Mut. Ben. Ass'n., 160 Mass. 290; Palmer v. Welch, 132 Ill. 141-148-9.

Finding no material error in the record the judgment of the Municipal Court will be affirmed.

*Affirmed.*