DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1913.

---

### Carl O. Nyman, Appellee, v. Manufacturer's and Merchant's Life Association, Appellant.

#### Gen. No. 5,494.

1. INSURANCE, § 866*—*what declaration must contain*. In an action on an insurance policy providing for the payment of a specific sum on the death of the insured, the declaration must aver the making of the certificate, its terms, the payment of the premiums, the death of insured and the giving of notice and proof of death as required in the certificate, and upon proof of such averments a *prima facie* right of recovery will be established.

2. INSURANCE, § 872*—*when insurer has burden of proof*. An insurance association has the burden of establishing a defense, set up in special pleas, that the insured was suffering from Bright's disease when accepted, and that her answers as to health were false.

3. INSURANCE, § 909*—*when finding will not be disturbed*. Where an insurance association contended that the insured was suffering from Bright's disease when accepted, and that her answers as to health were false, *held* that the findings of the jury that such defense was not sustained by the evidence would not be disturbed, such findings not being the result of passion or prejudice, or mistake as to the evidence.

---

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

4. TRIAL, § 213*—*when direction of verdict is improper.* The giving of an instruction directing a verdict for plaintiff would be reversible error where a defense alleged in a special plea was ignored, but such error would not be prejudicial where the preponderance of evidence does not support such plea.

5. INSURANCE, § 871*—*what will be presumed.* An association which has insured a person, after a medical examination, cannot attack the statements of its physician in an action on such policy, and it will be presumed that such physician acted in good faith and in the full discharge of his duties when he made the examination and report.

6. INSURANCE, § 120*—*how policy is construed.* Where a provision of an insurance policy is inserted by the insurance association of its own volition, it will be given that construction which is most favorable to the insured.

7. INSURANCE, § 330*—*what is effect of notice to agent of insurer.* Notice to an agent at the time of application for insurance of facts material to the risk is notice to the insurer, and will prevent it from insisting upon a forfeiture for causes within the knowledge of the agent.

Appeal from the County Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913.

C. E. BOTSFORD and F. A. McCARTHY, for appellant; R. K. WELSH, of counsel.

J. E. GOEMBEL, for appellee; WALTER E. HEALY and G. R. BEVERLY, of counsel.

MR. PRESIDING JUSTICE WHITNEY delivered the opinion of the court.

This is an action in *assumpsit* brought in the court below on a benefit certificate for $2,000 issued by the Manufacturer's and Merchant's Life Association to Anna S. Nyman in which Carl O. Nyman, a son, was beneficiary. The general issue and three special pleas were filed to the declaration. The first special plea averred that the insured warranted that her answers to the questions in the application were true and agreed that such answers should be a part of the contract;

that she was asked "Are you in good health?" to which she answered "Yes sir," and averred that said answer was false; that she was afflicted with Bright's disease; that the warranty was broken and the certificate null and void. The second special plea was the same as the first except that it was based on the question "When were you last attended by a physician?" to which she answered "About two years," which answer the plea averred was false and concluded the same as the first. The third special plea averred that the certificate contained the clause: "This certificate to take effect and be in force only on the date received by the party and on condition that she then be in good health;" that on the date of the delivery of the certificate she was suffering from Bright's disease and other serious ailments and that the Association did not learn of this fact until after her death. There was a replication to each of the special pleas. The replication to the first and second denied that the answers to the questions were false. The replication to the third plea averred that she was in good health at the time she received the certificate. The trial resulted in a judgment against appellant for $2,058.33 from which the appellant prosecutes this appeal. The errors assigned and argued are (1) that the verdict is against the evidence and the weight thereof; (2) error in refusing to set aside the verdict and grant a new trial; (3) error in refusing to direct a verdict for defendant at the close of all the evidence; (4) error in giving third instruction asked by plaintiff.

In an action of this character where the policy provides for the payment of a specific sum on the death of the insured, the declaration must aver the making of the certificate, its terms, the payment of the premiums, the death of the insured and the giving of the notice and making of the proof thereof to the Association as required in the certificate, and upon proof of such averments in so far as their proof is not waived

or dispensed with, a *prima facie* right of recovery will be established which the Association must meet by affirmative action to defeat recovery. *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474.

The declaration in this case averred these necessary things. Appellee's proof shows the answers to the questions set up in the first and second pleas were made on April 11, 1910; that the first premium was paid and certificate delivered to the insured April 19, 1910; that the last premium was paid June 20, 1910; that she died of Bright's disease June 22, 1910; that the Association was notified of her death and furnished with proof thereof; that appellee was her son and the beneficiary named in the certificate. This made a *prima facie* case. The burden of establishing the defense set up in the special pleas was upon appellant. The evidence on the questions averred in these pleas was conflicting, the credibility of the several witnesses for the respective parties and the weight of evidence having been in the first instance for the jury to determine, and the verdict bearing the approval of the trial judge, the finding of the jury that none of the special pleas were sustained by the evidence, should not be disturbed unless this court be satisfied that the jury was moved by passion or prejudice or great mistake as to the effect of the evidence, or that there is reversible error in the giving or refusing of instructions. We cannot conclude from the record in the case that the jury was moved by any improper influences, or that they in any way went outside of their legitimate province in the weighing of the evidence. Therefore, we see no error of the trial court in refusing to direct a verdict for appellant. The third instruction asked by appellee directed a verdict for appellee, and the giving of it would have been reversible error because it ignored the defense alleged in the second special plea if we were not of the opinion that the error was not prejudicial to appellant, as we are of the further opinion that the preponderance of the evidence did not

support said second special plea. We find there was
no reversible error in the giving or refusing of in-
structions as contended for by appellant. The case
therefore comes before this court to determine whether
we ought to come to a conclusion on the facts different
from that announced in the verdict of the jury. As a
basis for the issuing of the policy of the Insurance
Association there was a medical examiner's statement
by Dr. William E. Park, whose undisputed testimony
is that he was appellant's medical examiner. There-
fore he was its agent, certainly as to everything con-
nected with the medical examination. Dr. Park's re-
port is in substance as follows: Knows applicant to
be the same person named in the application; the an-
swers were made and signed in the examiner's pres-
ence; it is not believed the applicant is older than the
age given; has no reason to suspect applicant of in-
temperate habits or leading an immoral life; has no
reason to doubt any statement made by applicant;
color of hair, gray; eyes, brown; applicant is a female;
sight, good; hearing, good; figure, spare; healthy ap-
pearance. (The blank on which the report is written
contains the following printed matter of which Dr.
Park cannot plead ignorance.) "The following ques-
tions are to be answered ONLY after a physical ex-
amination of the applicant and a medical examination
of the urine." The report then continues in substance
as follows:—"Rate of pulse, 72; does not intermit;
is not irregular; height, 5 feet 7 inches; weight, 127
pounds; measure of chest, 32; expiration, 30; inspira-
tion, 34; measure of waist, 24; finds no indication of
disease of the heart or blood vessels; finds no indica-
tion of disease of the nervous system; finds no in-
dication of disease of the respiratory organs; finds no
disease of the abdominal or pelvic organs; analysis of
urine, reaction acid; specific gravity, 1020; no al-
bumen and no sugar; (a) is sure urine examined was
passed by applicant; (b) date of examination, April

11, 1910; (c) examination made at office; found applicant free from physical and mental defect and in good health; risk first class; certifies above statement is true. Signed, William E. Park, M. D. Medical Examiner, Rockford, Illinois.''

It is presumed appellant's medical examiner was acting in good faith and in the full discharge of his duties when he made this examination and report, at least appellant cannot now be heard to say he did not by his report intend to state the truth. This report must be held to be contradictory to all evidence offered on the trial to the effect that applicant was afflicted with chronic Bright's disease at the date of the medical examination, to-wit, April 11, 1910. It is absolutely inconsistent with the hypothesis that insured was afflicted with that disease in chronic form on the date of the delivery of the certificate of insurance a few days later, on April 19, 1910, and it certainly establishes *prima facie* appellee's position that she was not afflicted with any disease on the said last mentioned date. By the language of the policy, appellant's articles of incorporation are expressly declared to be a part thereof, and section 4 of said articles of incorporation provides: ''The association shall issue policies of insurance * * * to persons who have passed a satisfactory medical examination.'' Under the provisions of the policy it rested with the medical examiner to determine finally for the Association whether applicant should be accepted or rejected. Whatever may have been her actual physical condition, by the contract between the parties, it was expressly committed to the examiner to decide the question whether or not the applicant should be entitled to receive the certificate of insurance. This provision was inserted therein by the Association of its own volition and appellee is accordingly entitled to the benefit of the most favorable construction that can be placed upon the same. *Grand*

*Legion of Illinois Select Knights v. Beaty,* 224 Ill. 346.

Notice to the agent at the time of the application for the insurance of facts material to the risk is notice to the insurer, and will prevent him from insisting upon a forfeiture for causes within the knowledge of the agent. *Phenix Ins. Co. v. Hart,* 149 Ill. 513; *Hancock Mut. Life Ins. Co. v. Schlink,* 175 Ill. 284; *Royal Neighbors of America v. Boman,* 177 Ill. 27; *Arnhorst v. National Union,* 179 Ill. 486; *Provident Sav. Life Assur. Soc. v. Cannon,* 201 Ill. 260; *Mystic Workers of the World v. Troutman,* 113 Ill. App. 84; *Garfinkel v. Alliance Life Ins. Co.,* 140 Ill. App. 380.

It is claimed that Dr. Hansen, who was sworn for appellant, stated that insured told him she had consulted with Dr. Nyman within two years. That might be implied from what he stated she said, but a careful reading of his testimony will show that he did not so say. After Dr. Hansen had treated her for about a month, Dr. Kimball was called, and he testified he found her in advanced stages of Bright's disease and that he had sometimes attended her. He did not testify he had attended her within two years preceding the delivery of the certificate. Dr. Fitch stated he had attended her off and on for twenty years. He did not state he had attended her for two years previous to the delivery of the certificate. This was all the evidence offered as tending to show that she had been treated by a physician within two years prior to the application for the certificate, or that she was not in good health on the delivery of the certificate. It appears from a consideration of the medical evidence offered on both sides of the case that Bright's disease is really an inflammation of the kidneys that is denominated either acute or chronic, chiefly with reference to the period it has existed in the subject; the chronic form extending over a period of several months, and the acute form appearing suddenly and usually being of very short duration. It was also

testified to by physicians on both sides, indeed, it may be said to be the consensus of opinion among all the physicians who testified, when their several statements both on direct and cross are considered, that albumen might be present in the urine and yet there might be no trace of Bright's disease in the subject, and that a person who had previously been in good health might suddenly be afflicted with an acute form of the complaint and as a result die in the course of two or three weeks.

It is thought no useful purpose can be served by detailing the evidence of the several physicians in this respect. It does not appear from the evidence that it was not possible for the insured to have been in good health when the certificate of insurance was delivered to her and that Bright's disease might have developed thereafter. It is deemed sufficient to say that in the conflicting and contradictory state of the evidence, we are not prepared to say the jury was wrong in rendering a verdict for the plaintiff. Finding no reversible error in the record, the judgment of the court below is affirmed.

*Affirmed.*