John G. Gray, Defendant in Error, v. North America Mutual Union, Plaintiff in Error.

Gen. No. 8,130.

Opinion filed January 25, 1928.

P. M. HAMILTON, for plaintiff in error.

SUMNER & REARDON, for defendant in error.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

The president and secretary of plaintiff in error on May 16, 1925, purported to issue a certificate of membership in plaintiff in error, corporation, to one William Gray of Jerseyville, Illinois, which certificate recites that "in the event of death of said member entitles, John Gray of Jerseyville, Illinois, named as Beneficiary to an amount not to exceed the sum of One Thousand Dollars on Class B certificates and Five Hundred Dollars on Class A certificates, Subject however to the conditions herein named and it is understood that any benefit mentioned in this policy is conditioned, that prompt and full payment by the MEMBER be made to the North America Benefit Corporation, at its office in Springfield, Illinois, of any and all contributions that may become due hereon pursuant to the provisions of the application for this policy and the By-Laws of this Corporation, AND PROVIDED FURTHER, that the holder of this contract shall have fully complied with the conditions and agreements contained in the application, and in this certificate and in the By-Laws of the North America Benefit Corporation hereinafter set forth."

It is further alleged in the declaration: "And thereupon on, to-wit, the 16th day of May, 1925, the defendant made and executed its certain contract and delivered the same to the said William Gray, and thereby then and there in and by said contract for insurance the defendant promised and agreed to pay to the plaintiff, John G. Gray, upon the death of the said William Gray the sum of money set forth in said contract, the said sum being so payable by the defendant upon the terms and conditions in the said contract."

It is averred that after the execution of said certificate and contract, on the 26th day of June, 1926, in the county of Greene and State of Illinois, the said William Gray departed this life, and that during his life the said William Gray did observe and comply with all of the provisions and terms of the contract on his part to be kept and performed by the terms thereof, and that he, the plaintiff (defendant in error) has at all times, since the death of said William Gray, kept, observed and complied with all of the provisions and terms of the contract on his part, by the terms thereof, to be by him kept and performed, and it is averred that plaintiff in error became liable to pay to the defendant in error the sum of $500, after alleging due and sufficient proofs of death. The declaration sets out the certificate in full and a copy of the by-laws of the corporation, among which is section two of article one as follows:

"Membership—Any person, male or female, between the ages of 6 months and 74 years, inclusive, at nearest birthday, of good moral character and in good health, if accepted by the corporation, may become a member of this Corporation by signing the application and paying a membership fee and one assessment in advance."

Section three of article one is a follows: "Certificate—When an application is accepted by this corporation and the membership fee and one assessment in advance are paid, the Corporation will issue to such applicant a certificate, but no liability shall arise thereon against the corporation, nor any benefit be due to the applicant until the issuance of such certificate and its delivery to and acceptance by the applicant while such applicant is in good health."

Section four of article one is as follows: "Application—It is understood that a certificate is issued based on the fact that the answers in the application submitted are true, if it is found that the answers to

any of the questions are untrue, then the entire contract becomes null and void.''

Defendant in error also filed the common counts. There was a plea of the general issue and plaintiff in error filed two special pleas, in which the application was set out in full, which contained the following provisions:

''I hereby declare and agree that I am strong and in good mental and physical condition, and that the above statements as to my occupation, age and physical condition are true, and correct, and are made to enable me to obtain a membership certificate in NORTH AMERICA MUTUAL UNION, of SPRINGFIELD, ILLINOIS.

''The age and condition of health as stated herein are warranties.

''In case of fraud or misrepresentations the liabilities of NORTH AMERICA MUTUAL UNION shall not exceed the amount paid in by the applicant.

''It is hereby provided and mutually agreed that this application shall be considered as part of the contract for membership and should this application be accepted and the certificate issued thereon, I hereby accept the by-laws and regulations with all amendments and additions governing the Union and hereby appoint and constitute A. C. Littlejohn, of Springfield, Illinois, to be my lawful attorney in fact, and in my stead, is hereby authorized and empowered to cast my vote at any meeting. The proxy shall continue in force until revoked by me by notifying A. C. Littlejohn by registered mail at least ten days prior to any meeting of the members.

''I affirm that I have read or heard read the foregoing questions and the answers are true.''

There was a trial by jury and a verdict and judgment in behalf of defendant in error in the sum of $475, and plaintiff in error has brought the record by writ of error to this court for review. Various assign-

ments of error are made. For a full statement of the plans, purposes and methods of plaintiff in error corporation, reference is had to the case of *Laughlin v. North America Benefit Corp.*, 244 Ill. App. 391. It is said that since the rendering of that opinion some minor changes have been made in the charter and by-laws of the corporation. It is noticeable that the span of life for membership has been much broadened to include infants 6 months of age, to citizens 74 years of age with no limitation upon their intelligence or lack of intelligence, or capacity to read or write, except that all are required to make truthful answers to a series of questions and to sign the application to secure membership.

It is assigned as error that the declaration does not state a cause of action, and that defendant in error did not charge or offer any testimony to show that the said certificate was issued and delivered to the applicant while such applicant was in good health. This was a condition precedent to defendant in error's right to recover. (*Hartsock v. Kaskaskia Livestock Ins. Co.*, 223 Ill. App. 433, 437; *Laughlin v. North America Benefit Corp., supra.*) However, plaintiff in error raised this identical issue in one of its special pleas, and the rule is that although a material allegation may be omitted from a declaration, yet if a defendant, by a special plea, tenders an issue on the very allegation which was omitted in the declaration, and a replication is filed to said plea putting the same in issue, then such plea cures the omission in the declaration. (*Wallace v. Curtiss*, 36 Ill. 156; *Rubens v. Hill*, 213 Ill. 523, 537.)

The testimony in this case shows that the beneficiary, defendant in error, and one Dieter Damm, agent of plaintiff in error, made out the application in this case, Damm writing the answers to the questions and defendant in error signing the purported applicant's name to the application, and the purported ap-

plicant, William Gray, never knew anything about it. The certificate was delivered to the defendant in error, who has made all the payments required to be made by the by-laws of defendant in error. The only knowledge that William Gray ever had that any such certificate was in existence, or that he was a member of the corporation is that defendant in error testifies that he thinks he showed the certificate to his father at one time, but he states that his father never had the paper, and the testimony is undisputed that the father, purported member, never gave his consent to joining the corporation. In this connection the following portion of the testimony of Dieter Damm, agent for plaintiff in error, is highly enlightening and morally of interest:

Q. ''You say you had written a large number of applications for this Company—I ask you if it has been your custom with this Company to fill out these applications and have them signed in the same manner as this one.''

A. ''Yes, sir.''

''(Question objected to as improper by Defendant— objection sustained, and Plaintiff excepts to the ruling of the court.)

Re-cross Examination

''I stopped and talked with Gray on the day this application was made. Had application with me.''

Q. ''Why did you not have him sign it while you were talking to him?''

A. ''Because he didn't have to.''

''The company gives the parties who take out the insurance the right to sign the parties' application.

''I could sign it myself but he was not related to me; people related to him could take out insurance; had the right to sign any application in any Mutual Insurance. Got that authority from the company, they told me to write anybody asking insurance on their parents. Littlejohn told me by letter. I have

not got that letter, do you think I would hold a letter four years. Got that authority four years ago.''

Q. "He told you anybody could sign an application, it made no difference?"

A. "I said anybody could take out an application, not sign it, on their relations.''

Plaintiff in error on its motion for a new trial insisted that the verdict was not supported by the evidence, and it is assigned as error that the verdict and judgment are not supported by the evidence. Plaintiff in error now insists that no certificate of membership was ever issued and delivered to the said William Gray. This, defendant in error was required to prove under the plea of the general issue. We are of the opinion that the court erred in not granting a new trial.

Plaintiff in error, being a corporation not for profit, organized under the general law, had the right in its by-laws to fix and determine the rules to be complied with to attain membership, and one not complying with these rules does not become a member. Plaintiff in error is not an insurance company. Some light is thrown upon the nature of plaintiff in error's organization by what is said in *Peterson v. Manhattan Life Ins. Co.*, 244 Ill. 329, 337:

"In the ordinary sense a fraternal order is not an insurance company. Fraternal organizations exist which have nothing in the nature of insurance, others which issue no certificate and yet pay a death benefit, others which issue certificates and pay death benefits to some of its members and not to others, and others organized for the purpose of benefiting the widows, orphans, relatives or dependents of deceased persons. The latter have some of the characteristics of insurance companies, the chief resemblance consisting in the fact that a sum of money is payable upon the death of the member in the one case, the insured in the other, to the beneficiary. But the two classes of

corporations are organized under different acts and for different purposes. A life insurance policy may be obtained either by the insured or anyone having an interest in his life, may be payable to his estate, to a creditor or to a beneficiary named, and upon his death the amount is an ordinary debt, subject to garnishment or other process of the law. The certificate of a beneficiary society may be obtained only by the member. It cannot be made payable to his estate, but only to his widow or children or some one belonging to the classes mentioned in the statute, and the amount of the benefit is not an ordinary debt, subject to the claims of creditors by any legal or equitable process, but is expressly exempt from appropriation to the payment of any debt or liability of a certificate holder, or of any beneficiary named in a certificate, or of any person having any right thereunder. The insurance company is an ordinary business corporation and its policies are obtained for ordinary business purposes, for investment, for security, for the benefit of credit, as well as for the protection of the family. The beneficiary society is organized not for purposes of profit. Its certificates cannot be used for business purposes. Its members can receive no pecuniary advantage from its certificates. Creditors cannot reach such certificates, and the only purpose of the society is the benefit of the widows or orphans of its members or persons within the other classes mentioned in the statute.''

In *W. G. Press & Co. v. Fahy*, 313 Ill. 262, 265, the court held:

''A corporation not for pecuniary profit has a right to adopt rules prescribing the only mode in which membership therein can be maintained, and no one can rightfully claim membership who has not been admitted in the mode thus prescribed; nor has a court of equity any power to compel the corporation to issue a certificate of membership to an applicant who has not complied with such mode. (*American Livestock Com-*

*mission Co. v. Chicago Livestock Exchange,* 143 id. 210). The ownership of a certificate of membership does not constitute the holder a member nor entitle him to any rights as such, and the only way in which he can avail himself of such certificate is by tendering it in lieu of the prescribed initiation fee in case he is admitted to membership, or, in case his application is rejected, then by selling it for a consideration to some other person who may desire to become a member. (10 R. C. L. 1202.) A membership in an exchange for some purposes and in some aspects is regarded as property, while for other purposes it may be regarded otherwise. Although it is something more than a mere personal license or privilege, it is not property in the concrete or in the broad sense of that term.''

Under the by-laws of plaintiff in error and the holdings of the court, the purported applicant, William Gray, never made application to join plaintiff in error's corporation, never did join it, and never was a member of the society or corporation of which defendant in error now claims the benefit. The application was a fraud, the signature of William Gray to the instrument fictitious, and because some one, claiming to act as president, and another, purporting to act as secretary, signed their names to a purported certificate, did not bring into being a new member of the corporation, *in invitum,* who had never applied for membership and who was in utter ignorance that he was riding a mythical goat. If the document in question, called an application, can be accorded any virtue or force, it must be construed as a speculative contract contrary to public policy and within prohibited lines as to wager agreements. The testimony of Dieter Damm tends to show that it was so used and considered. This construction of plaintiff in error's method of admitting members is accentuated by its modified by-law to accept infants six months of age. Just how it is intended

that they shall express their wish or intention to join plaintiff in error's corporation, read and truthfully answer the questions asked in the application, and sign the same is not made clear. The interest of infants six months of age, in the welfare of widows and orphans and their next of kin, is no doubt of great public benefit, but just why those of a more tender age are excluded by plaintiff in error from this beneficent charitable work, speaking subjectively, we cannot understand. It has been the settled law of this State for two generations that a son, merely from the status of parent and child, did not have an insurable interest in the life of his father. (*Guardian Mut. Life Ins. Co. v. Hogan,* 80 Ill. 35; *Schwerdt v. Schwerdt,* 141 Ill. App. 389; *Zeigler v. Illinois Trust & Savings Bank,* 150 Ill. App. 85, 91; *Dresen v. Metropolitan Life Ins. Co.,* 195 Ill. App. 292, 294; *Bruce v. Illinois Bankers Life Ass'n,* 207 Ill. App. 555, 558.)

*Guardian Mut. Life Ins. Co. v. Hogan, supra,* has been affirmed in *Hawley v. Aetna Life Ins. Co.,* 291 Ill. 28, 30, where it is held: "The courts have uniformly held that one having no insurable interest in the life of another cannot procure a policy of insurance on such life, and the policy so procured is void at its inception. (*Guardian Mutual Life Ins. Co. v. Hogan,* 80 Ill. 35; *Golden Rule v. People,* 118 id. 492; *Connecticut Mutual Life Ins. Co. v. Schafer,* 94 U. S. 457; *Warnock v. Davis,* 104 id. 775; 3 Am. & Eng. Ency. of Law,—2d ed.—929.)"

It has been held that one may effect insurance upon his own life and assign it to one having no insurable interest. (*Guardian Mut. Life Ins. Co. v. Hogan, supra; Hawley v. Aetna Life Ins. Co., supra; Bloomington Mut. Benefit Ass'n v. Blue,* 120 Ill. 121.) But a person cannot effect insurance on the life of another in which he has no insurable interest for the reasons as stated in *Grigsby v. Russell,* 222 U. S. 149, where the court said: "The ground suggested for denying the

validity of an assignment to a person having no interest in the life insured is the public policy that refuses to allow insurance to be taken out by such persons in the first place. A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end. And although that counter interest always exists, * * * the chance that in some cases it may prove a sufficient motive for crime is greatly enhanced if the whole world of the unscrupulous are free to bet on what life they choose. The very meaning of an insurable interest is an interest in having the life continue, and so one that is opposed to crime. And what, perhaps, is more important, the existence of such an interest makes a roughly selected class of persons who, by their general relations with the person whose life is insured, are less likely than criminals at large to attempt to compass his death.''

Plaintiff in error is not an insurance company, but the same principle of public policy applies to its certificates and contracts. The member, acting in his own behalf and voluntarily, may make such provisions of charity for his widow and orphans or next of kin as he may desire to make, but when others, without his knowledge or consent, undertake to direct his charities, based upon the period of his life in which their only interest welcomes a speedy death and their enjoyment of his involuntary bounty, such contracts are mere wagers and gambling contracts and void at their inception. In the opinion of this court defendant in error did not establish that William Gray ever became a member of said corporation, and the certificate issued constituted a mere wager and gambling contract and was void at its inception. Under the proofs submitted, defendant in error in any event was not entitled to recover any greater sum than he had paid in to said

corporation. Other issues are raised but it would serve no useful purpose to extend this opinion in their consideration.

For the reasons stated, the judgment of the county court of Jersey county is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*